# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2194 | **DATE** | 11/27/2000 |
| **CASE TITLE** | Reginald Brown vs. T. Mazurski, Star #17973, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/14/00 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [16] and defendants' motion for summary judgment [24] are denied. This case is set for status on Thursday, December 14, 2000 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 28 2000 date docketed | |
| | Notified counsel by telephone. | | 35 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | NOV 2 0 2000 date mailed notice | |
| RT | courtroom deputy's initials | FILED FOR DOCKETING  CO NOV 28 AM 7: 51 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REGINALD BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 99 C 2194 |
| ) | |
| T. MAZURSKI, Star #17973, a Chicago Police ) | Judge Joan B. Gottschall |
| Officer, and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

DOCKETED

NOV 28 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Reginald Brown has brought suit against police officer Thomas Mazurski and the City of Chicago for false arrest and malicious prosecution. The claims stem from what Brown portrays as his unjustified arrest and incarceration on suspicion of receiving drug money after Brown's friend sold drugs to an undercover officer. Both sides have moved for summary judgment. For the reasons set forth below, both motions are denied.

## Background

On March 9, 1998, Brown and Edward McLaurin were arrested and charged with delivery of a controlled substance. The arrests were made as part of an undercover investigation called "Operation Hammerdown." Defendant Mazurski was the "case officer" or "enforcement officer" for a team that participated in the operation. His team included Sergeant Nomellini and officers Mizera, Andre Watkins, and John Lewis. Officer Watkins bought a controlled substance from McLaurin inside a store, and some minutes later observed him get into a car driven by Brown at an adjacent apartment building. Watkins and Lewis, along with officers in another vehicle,

35

followed Brown's car and subsequently pulled it over (although which officers pulled it over is unclear). Brown saw two police officers approach the car and tell him and McLaurin to get out of the car. Watkins identified, via the police radio, McLaurin as the offender who sold a controlled substance to him. Brown heard someone state "yes, that's him" over the radio. Watkins told other officers that he observed McLaurin pass something to Brown. None of the officers saw Brown in or near the store when Watkins purchased narcotics from McLaurin.

When Mazurski arrived on the scene, Brown's car was already stopped and there were two civilians standing outside the car. Mazurski testified that Brown and McLaurin were searched in his presence, but he cannot remember who was searched first. He also cannot remember whether they were patted down or a more thorough search was conducted. Mazurski did not see Brown do anything illegal prior to his arrest. At the time the car was stopped, Brown did not know that McLaurin had sold drugs to Watkins. Mazurski and Watkins testified that it was relayed to them that Brown had pre-recorded funds ("1505 funds") on his person, but Brown denies this and objects to the testimony as hearsay. Brown testified that he saw two other officers in the area besides the two who had originally ordered him out of the car. Brown testified that he had never seen any of the four officers before, and has never seen them since.[1]

Following Brown's arrest, Mazurski prepared an arrest report and signed, under oath, a

---

[1] Brown purports to dispute this by contending that "he can identify the officers who arrested him but he has never had the opportunity to view them following the arrest." (Pl.'s Resp. to Stat. of Facts ¶ 20) However, the only support for this contention is an affidavit in which Brown states that the sheriffs instructed him not to look around the courtroom at his preliminary hearing, but simply to look straight at the judge when in front of the bench. Brown cannot extrapolate from this statement to assert that he could identify the four officers, or that he never had the opportunity to view the officers.

2

criminal complaint. Brown remained in custody from March 9 until April 8, 1998. On April 8, Mazurski testified in a preliminary hearing on the charges against Brown. Brown remembers that an officer testified at the hearing, but Brown stated that he had never seen him before. At the hearing's conclusion, the judge found no probable cause.

Brown filed a three-count complaint against Mazurski and the City of Chicago, bringing claims for arrest without probable cause and malicious prosecution under § 1983 (Count I), malicious prosecution under Illinois state law (Count II), and damages against the City pursuant to 745 ILCS 10/9-102 (Count III). The parties have cross-moved for summary judgment.

## Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The City seeks summary judgment on the false arrest claim on the ground that Mazurski had no personal involvement in Brown's arrest. As support for this assertion, the City cites Brown's deposition testimony, in which he stated that he had never before seen the officer who testified at his preliminary hearing. Because that officer was Mazurski, the City contends that Mazurski could not have been involved in Brown's arrest. The court disagrees. While Brown's

testimony would certainly be relevant to the trier of fact, it is by no means dispositive of Brown's claim. The fact that Brown did not recognize Mazurski at his hearing does not mean that Mazurski did not play a role in the arrest for which he could be held liable. Judging by Mazurski's signature on the arrest report, and his undisputed presence at the arrest scene, he certainly was involved in Brown's arrest. The City extrapolates from Brown's testimony to conclude that Mazurski had nothing to do with the arrest; a more likely scenario is that Brown simply may not have observed Mazurski carefully or closely enough at the arrest or at the hearing to remember him. In any event, this is for the trier of fact to determine.

The City next argues that it is entitled to summary judgment on both the false arrest and malicious prosecution claims because there was probable cause to arrest Brown. The existence of probable cause is an absolute bar to both claims. *See Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) ("[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution."). Probable cause exists if "the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to believe that an offense was committed." *Simkunas v. Tardi*, 930 F.2d 1287, 1291 (7th Cir. 1991). The "existence of probable cause is often a jury question," and summary judgment is appropriate "only where there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). Here, the probable cause determination requires the weighing of witnesses' credibility and the resolution of seemingly conflicting evidence. Accordingly, the determination must be made by the jury.

The City hinges its probable cause argument on an unidentified source's statement that Brown had the 1505 funds on his person. Brown understandably objects to this statement as hearsay, but the objection misses the point. The City does not necessarily offer the statement for the truth of the matter asserted, but as evidence of Mazurski's state of mind at the time of the arrest. If Mazurski had a reasonable basis for believing that Brown possessed the money from the drug transaction, probable cause may have existed. Nevertheless, the court cannot find that the unidentified source's statement entitles the City to summary judgment on the probable cause issue. Even if Mazurski had heard that Brown possessed the drug funds, he or another officer easily could have verified whether that was the case before arresting and incarcerating Brown. The fact that no one can identify the source of that statement raises an issue as to whether it was "reasonably trustworthy information." *Simkunas*, 930 F.2d at 1291. The failure of any witnesses to confirm as a matter of fact that Brown possessed the 1505 funds, coupled with Brown's sworn testimony that no money was recovered from him, precludes the court from determining on summary judgment that probable cause existed. Again, this issue is for the trier of fact to determine.

The City also seeks summary judgment on the malicious prosecution claims set forth in Counts I and II, arguing that Brown has failed to establish sufficient post-arrest misconduct by Mazurski. To state a claim under § 1983 for malicious prosecution, the plaintiff must allege that: (1) he satisfies the requirements of a state law claim for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). To state a claim under Illinois law for malicious prosecution, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for

5

which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in favor of the plaintiff; and (5) there was an injury. *Id.*

In most malicious prosecution cases filed against police officers, there is an intervening event – such as the prosecutor's decision to indict – that breaks the chain of causation linking the police to the wrongful prosecution. *See id.* at 1053 ("[T]he chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor."). In these instances, claimants must allege some police wrongdoing *after* the arrest that influences the prosecutor's decision to bring the case to trial. *Id.* Examples of post-arrest wrongdoing include giving false testimony or withholding exculpatory evidence. *See id.* at 1054 (dismissing malicious prosecution claim where "[t]here is no allegation that the detectives covered up exculpatory evidence or testified untruthfully"); *Womack v. Aguirre*, No. 97 C 6020, 1998 WL 249228, at *2 (N.D. Ill. May 11, 1998) (allowing malicious prosecution claim where officers allegedly prepared false police reports and made false statements to prosecutors).

In this case, there is sufficient evidence by which the trier of fact could conclude that knowing misstatements by Mazurski led to the initiation of criminal proceedings against Brown. The trier of fact could find that Mazurski did more than simply arrest Brown. The arrest report and criminal complaint signed by Mazurski both stated that Brown sold drugs to an undercover officer. Given that Mazurski knew that Brown, at most, was handed drug money from the seller well after the drug transaction took place, the trier of fact could conclude that these statements were materially and knowingly misleading. Contrary to the City's argument, Mazurski was not

6

merely transmitting information he learned from other officers, as there is no evidence that anyone accused Brown of actually selling the drugs in question. Because the other elements of the malicious prosecution claim may be found to be satisfied by the trier of fact, the City is not entitled to summary judgment.

Finally, the City argues that even if there was a lack of probable cause to arrest Brown, Mazurski is entitled to qualified immunity. According to the City, "Officer Mazurski is entitled to qualified immunity unless no reasonable officer could have believed that the alleged conduct was lawful." (Defs.' Mtn. at 11) It is true that a defendant's entitlement to qualified immunity "is a question of law for the court, not a jury question." *Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992). However, "[w]hen the issue of qualified immunity remains unresolved at the time of trial . . . the district court may properly use special interrogatories to allow the jury to determine disputed issues of fact upon which the court can base its legal determination of qualified immunity." *Id.*

Such a procedure will be necessary in this case because Mazurski's entitlement to qualified immunity will turn on whether there was probable cause for his actions – a disputed factual question which cannot be resolved short of trial. If no one bothered to determine whether Brown had the drug money on his person before arresting him, there may have been no probable cause, and a reasonable officer arguably should have known that arresting and initiating criminal proceedings against a suspect under those circumstances was unlawful. Further, if the trier of fact concludes that Mazurski's statements in the arrest report and criminal complaint were misleading, that might be another basis for rejecting qualified immunity. Given the evidence at this stage, the court cannot determine that Mazurski is entitled to qualified immunity.

The court's inability to determine the existence of probable cause on summary judgment is also fatal to Brown's cross-motion for summary judgment. Contrary to Brown's argument, the police officers' authority to search Brown did not stem merely from his presence in the car with a wanted suspect, but from one officer's observation of the suspect handing something to Brown as they were pulled over. Whether the police actually found the drug money on Brown's person, and whether Mazurski's belief to that effect was reasonable, must be determined at trial after the jury has the opportunity to weigh the witnesses' credibility. Also to be determined at trial is the extent to which Mazurski's statements in the arrest report and criminal complaint influenced the initiation of criminal proceedings against Brown, and whether Mazurski's statements were materially misleading.

## Conclusion

For the reasons set forth above, the court denies the parties' cross-motions for summary judgment. This case is set for status on Thursday, December 14, 2000 at 9:30 A.M.

ENTER:

Joan B. Gottschall
United States District Judge

DATE: November 27, 2000